Ernest **DOMINGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–87–00078–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 19, 1988.

Mark Stevens, San Antonio, for appellant.

Fred G. Rodriguez, Mark Luitjen, Ronald E. Mendoza, Edward Shaughnessy, III, San Antonio, for appellee.

Before BUTTS, REEVES and CHAPA, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a conviction for the offense of delivery of heroin. TEX. REV.CIV.STAT.ANN. art. 4476–15 § 4.03(a), (b) (Vernon Supp.1988). After finding appellant guilty, a jury assessed punishment at 35 years' imprisonment. This sentence was cumulated with a previous 35–year–sentence (04–87–00079–CR).

Appellant brings five points of error, the first challenging the sufficiency of the evidence to prove delivery of heroin. The indictment charged that appellant delivered heroin by actual transfer to Pedro Rodriguez. The evidence shows that Rodriguez was a San Antonio police officer working "undercover." He met with appellant on May 28, 1986, requesting approximately twenty dollars worth of heroin, giving appellant eighteen dollars and receiving from him an orange balloon containing heroin.

Rodriguez took the balloon to the narcotics bureau to give to Detective Ron Dawson. He testified he placed his initials, P.R., on the orange balloon before he transferred it to Dawson. Since Dawson could not be located, Rodriguez locked the orange balloon in his locker to which only he had the key. The next morning he met Dawson at a local park and gave him the balloon. The State asked Rodriguez:

Q: And after that date (May 28, 1986), did you have occasion to transfer *that orange balloon that you got from Ernest Dominguez to Detective Dawson?* (Emphasis added)

A: Yes, sir, I did. The following day, which was the 29th of May.

The record further shows that Rodriguez also identified his initials on the balloon which was introduced in evidence.

Q: Were those the initials that you placed on that balloon before you transferred it to Detective Dawson?

A: Yes, sir.

Detective Dawson stated he too placed his initials on the orange balloon given to him by Rodriguez. Dawson told how he packaged the balloon and its contents and delivered it the same day to James E. Bousser at the crime laboratory. Bousser, a chemist, identified the heroin as the same he received from Dawson in the orange balloon.

Appellant's attack on the sufficiency of the evidence is directed only to the chain of custody of the heroin in the orange balloon. He relies on *Jones v. State*, 538 S.W.2d 113 (Tex.Crim.App.1976) where the Court of Criminal Appeals found that the heroin was never connected "in any manner" to the defendant. The officer in that case who gave the heroin to the chemist did not identify the powder-filled balloon as "the same one officer Stringfellow saw appellant throw from his car." *Jones v. State, supra* at 114–15.

After having viewed the evidence in the light most favorable to the verdict, we find

a rational trier of fact could find the elements of the offense as charged beyond a reasonable doubt. *See Wilson v. State,* 654 S.W.2d 465 (Tex.Crim.App.1983). We hold the proof is sufficient to show that the orange balloon containing heroin was the same one delivered by appellant to Rodriguez. The point of error is overruled.

Appellant next contends the trial court should have submitted this requested jury instruction:

> The State of Texas bears the burden of proving beyond a reasonable doubt that the substance introduced as State's Exhibit [Four], and identified as heroin by the chemist is the identical substance which was seized from ERNEST R. DOMINGUEZ, if any substance was seized from him on May 28, 1986, and the identical substance which was tested and determined to be heroin by its chemist. Therefore, unless you find from the evidence, or if you have a reasonable doubt thereof, that the substance introduced as State's Exhibit [Four] is the identical substance which was seized from ERNEST P. DOMINGUEZ on May 28, 1986, and the identical substance which was tested and determined to be heroin by its chemist, then you will find Defendant not guilty.

■ The trial court charged that the burden of proof was on the State to prove appellant's guilt beyond a reasonable doubt as well as charging generally on the presumption of innocence and reasonable doubt, as well as in the negative for purposes of acquittal. Reasonable doubt is given in the application of the law to the facts, again with a statement of the charge in the negative. *Adams v. State,* 588 S.W. 2d 597, 598–99 (Tex.Crim.App.1979). The court adequately enunciated the elements of the offense, applied them to the facts as alleged in the indictment and instructed the jury on the necessity of proving each element of the offense beyond a reasonable doubt. *See Eckert v. State,* 623 S.W.2d 359, 362 (Tex.Crim.App.1981). It is not required that the burden of proof should be applied by the court's charge to each element in a separate and distinct manner.

*Id.* at 362–63. The charge was sufficient. The point is overruled.

Appellant objected to the "unresponsive" answer of officer Rodriguez. His third point of error is that the trial court erred in overruling the objection. In an earlier identification hearing outside the jury's presence Rodriguez told of meeting appellant on three other occasions during a two week period prior to the subject occurrence. The meetings were in the same area (Lincoln Courts). Nothing illegal transpired at the street meetings which were very brief, however, drugs were allegedly discussed.

Appellant moved *in limine* to exclude testimony regarding the three previous meetings under TEX.R.CRIM.EVID. 404(b). The meetings were likened to "extraneous offenses." It was stated that although no overt illegalities occurred, there were discussions of drugs. "Whatever limited relevance it would have is certainly outweighed by its prejudicial effect."

The court then asked if these three prior meetings were all tied to this case, in preparation for it, and was answered affirmatively by the prosecutor. The court stated "overruled." Then defense counsel argued these were four separate transactions. The court then ruled, "Don't mention any other *illegal transactions* he may have made; only this one." But the court said the State could ask if Rodriguez had seen appellant before. Defense counsel stated, "... But if there are any circumstances mentioned, *then I might object,* if I think it harms my client...." "We'll see what happens," was the last comment by the trial court on the matter.

When Rodriguez testified before the jury, he said that on information of an informant he was at the Lincoln Courts on May 28 "to check out for drug violations" and he asked another person there (a Black male) where appellant was. Appellant was outside an upstairs apartment and "waved over" for Rodriguez to join him. Rodriguez purchased some heroin from him.

On cross-examination concerning identification of appellant, the officer was asked whether he had to ask someone where ap-

pellant was. Rodriguez replied that was required because appellant was not in the same place "where he used to hang out or where I had ..."

On recross-examination Rodriguez was asked:

Q: Now, you testified earlier that you received information ... that information caused you to go to the 1200 block of Menchaca to investigate possible narcotics violations. Now, was that [information] from the Black male; or did you receive that [information] before you went to to the 1200 block of Menchaca?

A: I already had previous knowledge of drug dealings concerning Mr. Dominguez.

Appellant objected "to that unresponsive answer." The objection was overruled.

On direct examination Rodriguez had said he went to the 1200 block of Menchaca based on information from another individual (an informant). An examination of the answer to the question "[O]r did you receive that before you went to the 1200 block of Menchaca?" leads to a possible conclusion that the answer may well have been a responsive one:

A: I already had previous knowledge of drug dealings concerning Mr. Dominguez (from the informant).

The court had the question read again by the court reporter, and the officer answered it, "I already had knowledge of previous drug dealings," the second time. The objection was overruled. The answer could logically mean that the previous knowledge came from the informant. His testimony had already established that he was looking for appellant and no one else. Although the trial court had cautioned Rodriguez against his bringing in other illegal transactions, his answer was to defense cross-examination. It does not appear to be unresponsive. Nor does it appear to refer to the three previous meetings he had with appellant.

However, on review it is not necessary that we determine whether the answer is error, that is, unresponsive.

▮▮▮ Appellant argues on appeal that his objection, "unresponsive answer," before the jury gives rise to his *in limine* extraneous offense argument outside the jury's presence in that the motion is apparently carried over into the trial as a proper form of objection. But motions *in limine* do not preserve error. *Maynard v. State*, 685 S.W.2d 60, 64 (Tex.Crim.App.1985). In addition, the motion *in limine* asking that Rodriguez not refer to his three prior meetings with appellant was granted to the extent that Rodriguez was not to refer to any other illegal transactions. We hold that an objection to the introduction of extraneous offenses was waived. Nothing is preserved for review.

▮▮▮ Since the motion for limine did not preserve error, we must review the objection that was made, which was "unresponsive answer." The point on appeal (extraneous offenses) does not comport with the objection at trial. If an objection made at trial differs from the complaint made on appeal, a defendant has not preserved any error for review. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim.App. 1986).

Appellant's fourth point addresses error in the misstatement of law by the prosecutor. The following exchange occurred during the defense argument at the guilt-innocence phase.

You took an oath. It's in the Charge. And you'll read the Charge. And when you go back there, when you first go back to deliberate, sit down and read the charge very carefully. And think about it. Because you'll see the words: reasonable doubt.

As we said originally, the State has the burden of proof beyond a reasonable doubt.

You'll see in there, Judge Butler tells you that Ernest Dominguez is presumed to be innocent.

So right now before you deliberate that presumption exists. And you have to go back there and decide whether the State has removed all reasonable doubt—

MR. LUITJEN: Objection, Your Honor.

MR. STEVENS: —about the elements of the offense.

MR. LUITJEN: The presumption has already been destroyed. It does not exist at the time that they go into that jury room. They can make their mind up any time during this trial.

THE COURT: I'm going to sustain the objection. Just disregard what Mr. Stevens said about that the presumption still exists. Just disregard that.

MR. STEVENS: On page five it says all persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.

So when you go back to the jury room, please read that. Please read the whole Charge.

It is axiomatic that all persons are presumed to be innocent. *See* TEX.PENAL CODE ANN. § 2.01 (Vernon 1974); TEX. CODE CRIM.PROC.ANN. art. 38.03 (Vernon Supp.1988). Appellant characterizes the prosecutor's objection as a misstatement of law during jury argument. The prosecutor was not presenting jury argument. Rather, the trial court's reaction to the State's objection is in the nature of a comment on the weight of the evidence. *See* TEX.CODE CRIM.PROC.ANN.ART. 38.05 (Vernon 1979). There was no objection to the comment (instruction), request for instruction to disregard, nor motion for mistrial. No relief was requested.

In *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex.Crim.App.1983) it is written:

To constitute reversible error in violation of article 38.05, the comment of the court must be such that it is reasonably calculated to prejudice the defendant's rights. *Marks v. State*, 617 S.W.2d 250 (Tex. Crim.App.1981). The record reflects no objection was made to the trial judge's comment. Error, if any, was waived for

failure to object. *Downey v. State*, 505 S.W.2d 907 (Tex.Crim.App.1974).

■ In the present case, the trial court's comment (instruction) was error. However, the trial court's written instructions to the jury contained a full statement of the constitutional protection of the presumption of innocence and were read to the jury in the courtroom as well as sent into the jury room for the jurors to follow. We must presume the instructions were followed.[1] The failure to timely object and request relief waives any error. The point is overruled.

In support of his fifth point, appellant claims that it was error to deny him his requested instruction on mistaken identity. Two police officers positively identified appellant. The defense argues it pointed out discrepancies between the testimony and the police report, and generally assailed evidence of the identification of appellant as the perpetrator.

Reconciliation of conflicts and contradictions in the evidence is within the province of the jury, and such conflicts will not call for reversal if there is enough credible testimony to support the conviction. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim.App.1982). The jury is the sole judge of the credibility of the witnesses and may believe those portions of the evidence that it deems proper. *Nixon v. State*, 572 S.W. 2d 699, 700–01 (Tex.Crim.App.1978).

■ Appellant cites no specific evidence in the record raising the issue of misidentification. We therefore find there is no evidence which raised the issue of mistaken identity. Moreover, the court's charge affirmatively required the jury to find beyond a reasonable doubt that appellant committed the offense. The jury was further instructed that, "Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty." *See, Wilson v. State*, 581 S.W.2d 661, 665 (Tex.Crim.App. 1979); *Guzman v. State*, 567 S.W.2d 188,

---

1. The written jury instructions also charged: You must disregard any comment or statement made by the Court during the trial or in these instructions which seem to indicate an opinion with respect to any fact, item of evidence or verdict to be reached in this case. No such indication was intended.

190 (Tex.Crim.App.1978); *Kemper v. State*, 643 S.W.2d 758, 760 (Tex.App.—San Antonio 1982, no pet.). The charge adequately protected appellant's rights and the trial court did not err in refusing the requested charge on mistaken identity. The point of error is overruled.

The judgment is affirmed.

CHAPA, J., dissents with opinion.

CHAPA, Justice, dissenting.

I respectfully dissent.

Appellant correctly asserts reversible error in his fourth point of error.

To illustrate clearly why the error is reversible, it is necessary to reiterate the pertinent exchange already recognized by the majority.

[MR. STEVENS–APPELLANT'S COUNSEL]

You took an oath. It's in the Charge. And you'll read the Charge. And when you go back there, when you first go back to deliberate, sit down and read the Charge very carefully. And think about it. Because you'll see the words: reasonable doubt.

As we said originally, the State has the burden of proof beyond a reasonable doubt.

You'll see in there, Judge Butler tells you that Ernest Dominguez is presumed to be innocent.

So right now before you deliberate that presumption exists. And you have to go back there and decide whether the State has removed all reasonable doubt—

MR. LUITJEN [Prosecutor]: Objection, Your Honor.

MR. STEVENS: —about the elements of the offense.

MR. LUITJEN: The presumption has already been destroyed. It does not exist at the time that they go into that jury room. They can make their mind up any time during this trial.

THE COURT: I'm going to sustain the objection. Just disregard what Mr. Stevens said about that the presumption still exists. Just disregard that.

MR. STEVENS: On page five it says all persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.

So when you go back to the jury room, please read that. Please read the whole Charge.

Although the majority has chosen to treat the court's ruling and gratuitous instruction as simply a comment on the weight of the evidence, the thrust of appellant's actual complaint is otherwise. Appellant clearly and correctly characterizes the prosecutor's objection as a misstatement of the law, improperly sustained by the court and made worse by the court's gratuitous instruction to the jury.

"In all cases the defendant is presumed to be innocent until the jury has concluded his guilt from the facts of the case. This obtains during the argument of counsel with as much force as when he is being arraigned." *McGrew v. State*, 140 Tex.Cr. R. 77, 143 S.W.2d 946 (1940).

In objecting, the prosecutor not only misstated the law, but told the jury he had already overcome the presumption of innocence. The trial court not only committed error in sustaining the objection of the prosecutor, but went further and gratuitously instructed the jury to disregard appellant's contention that his "presumption still exists." In so doing, the court not only undermined his own charge, but inadvertently created the appearance to the jury that he agreed with the prosecutor that the presumption of innocence had already been overcome.

The majority recognizes error was committed, but condones it as waived because no objection was made to the court's ruling. However, the majority fails to recognize that the improper objection was made by the State, and the erroneous ruling by the court. No requirement exists for an appellant to incur the wrath of a trial court by arguing with a ruling which has already been made.

While I agree that comments on the weight of the evidence can be waived when

not objected to, this is not the central issue here. We all agree that error was committed, and we must reverse, unless we determine "beyond a reasonable doubt that the error made no contribution to the conviction or the punishment." TEX.R.APP.P. 81(b)(2). When we consider the effect of the court's erroneous ruling and instruction, it is impossible to say that the error, beyond a reasonable doubt, made no contribution to the conviction or punishment.

I would reverse the judgment, and remand for a new trial.